In re RBA, INC., a Minnesota Corporation, f/k/a Rauenhorst, Bellows & Associates, Inc., Debtor.

Steven Bruce BOOKER, an Underwriter at Lloyd's, London, for Himself and Those Other Underwriters at Lloyd's, London, Subscribing to Certificates 25R 23408, 25R 23409, 25R 23410, Plaintiff,

v.

STAUFFER SEEDS, INC., f/k/a RBA, Inc.; Garner Schmidt; Herman Fridgen, Jr.; Lawrence Wilt, Jr.; Rodger Brandt; Arlo Andrews; Walter Brandt; Leonard Westrom; Marcellus Dietz; Orval Rinke; Roger Schmidt; William Grimes; Conroy Farms, Inc.; Wilbert Rinke; Fuhrman Bros., a partnership; Robert Ringger; Eugene Borsheim; Donald Forcier; Dennis Groneberg; Merton Johnson; Thomas Monson, Sr.; Thiel Bros., a partnership; Boom Bros., a partnership; Marvin Wilts; George Libbon; Roger Frisch d/b/a Felix Frisch & Sons, Inc.; Dale Johnson; Eldren Lichtsinn; Richard Mathias; James Conroy; Melvin Brunkow & Sons; Lawrence Armbrust; Gerald Frisch; Ewald & Darrell Moerer; Donald Fuhrman; Martin Fuhrman; Gene Stueve; Gary Timm; Orville Brunkow; Thomas Conroy; Stan Zych; Brandt Farms, Inc.; Joseph Stueve; Austin Culp; and Walter Wulff, Defendants.

Bankruptcy No. 4–79–1534.

Adv. No. 4–82–252(O).

United States Bankruptcy Court, D. Minnesota, Fourth Division.

May 23, 1986.

Gerald T. Carroll, Carroll & Faulconer, Minneapolis, Minn., for Stauffer Seeds, Inc., formerly RBA, Inc.

Thomas C. Athens, Arvesen, Lundeen, Hoff, Svingen & Athens, Fergus Falls, Minn., Mr. Warrenn C. Anderson, Fluegel, Anderson, Dalager, Dalager & Seibel, Morris, Minn., for the named Farmers.

## ORDER

PATRICK J. McNULTY, United States Magistrate.

The above-titled case came before the undersigned United States Magistrate, to whom it has been assigned for trial and all other proceedings in accordance with provisions of Title 28 U.S.C. § 636(c), upon post-trial motions. The Court has attempted to limit recitation of fact and procedural history to that which is essential to determination of the motions. This Order is concerned with motions by RBA and plaintiff for orders awarding attorney's fees payable by opposing parties and counsel. Plaintiff contends, generally, that he has been put to unnecessary expense, over a period of years, to pursue this action to prove what RBA[1] and Farmers, and their attorneys, knew before this action was commenced. RBA contends, generally, that it has been put to unwarranted expense to defend against spurious and frivolous claims made by plaintiff. Fee shifting, of course, is contrary to the American concept of free access to the courts, and, therefore, is permitted only when specifically authorized by statute or rule, or virtually mandated in the interests of justice by exceptional circumstances. The motions, therefore, must be considered in the narrow context of this case, and without losing sight of this Court's early expressed view that this case was of substantial importance to an appreciable segment of the Minnesota farming community, and presented numerous issues, of convoluted fact and law, which required distillation through discovery, and, perhaps the airing of a full scale trial. By invocation of nega-

Frank Walz, Best & Flanagan, Minneapolis, Minn., for plaintiff, Steven Booker, et al.

---

1. This case was commenced by RBA, Inc., which, during the course of litigation, was acquired by Stauffer Seeds, Inc. For simplicity, reference will be to RBA, regardless of time frame, and should be considered as reference to the proper corporation.

tive discretion, the Court made it clear that the case was not amenable to summary disposition, in all respects. The parties were forced to conduct proceedings accordingly, and none should be penalized for action taken within the Court's guidelines.

## I.

Plaintiff's first motion, premised upon provisions of Rules 11, 37(a)(4), 37(c) and 56(g), Federal Rules of Civil Procedure, and upon Title 28 U.S.C. § 1927, seeks an order assessing attorney's fees and costs against defendants, and against the law firms which represented defendants during the course of these proceedings. This motion has several divisible parts, one being a prayer for an award to reimburse plaintiff for all attorney's fees and costs incurred since the date of the settlement of a state court action brought by Farmers against RBA. This portion of plaintiff's motion and a motion by RBA for an order assessing attorney's fees against plaintiff to defray costs incurred in defending against Counts II and III of plaintiff's Second Amended Complaint have a common factual background and procedural history, and, to this extent, can be considered together.

## II.

On December 28, 1979, RBA filed a Petition for Relief pursuant to provisions of *Chapter 11, Title 11, United States Code*, in the Bankruptcy Court, District of Minnesota.

On March 3, 1980, while the debtors relief proceedings were pending, a group of farmers, including defendants named in this action, commenced suit against RBA in the District Court, Eighth Judicial District, State of Minnesota, seeking recovery of compensatory and punitive damages upon allegations of misfeasance and malfeasance in connection with the sale of sunflower seeds to these Farmers. For simplicity, plaintiffs in the state action, and those named as defendants in this action, will be referred to as Farmers.

Shortly thereafter, an agreement was reached whereby Robins, Zelle, Larson and Kaplan, which was representing RBA in the Bankruptcy Court, and Lord, Bissell & Brook, counsel for the Underwriters which insured RBA, would associate in defense of Farmers' claims, with the understanding that Underwriters reserved all rights provided in the policies if questions of insurance coverage arose. *See, Findings of Fact, etc., March 1, 1985, p. 9–14.*

On June 1, 1984, the United States Bankruptcy Court partially lifted the automatic stay imposed upon all proceedings affecting RBA by Title 11 U.S.C. § 362 to permit Farmers to proceed with the state court action. This Order foreclosed Farmers from attempts to prove claims, or to obtain judgment, for punitive or treble damages, but was without prejudice to other rights, and specifically provided for resumption of jurisdiction by the Bankruptcy Court upon entry of judgment in the state court.

Through the course of discovery, information which impacted upon insurance coverage was unearthed, and during February or March, 1982, the association of the two law firms to defend RBA in Farmers suit was severed. From that time forward Robins, Zelle assumed the defense for RBA, and Lord, Bissell represented Underwriters, although their efforts were, to a degree, coordinated.

On May 14, 1982, this Complaint seeking a Declaratory Judgment on coverage was filed.

Farmers' Complaint in state court was predicated upon allegations of breach of implied and express warranties, strict liability, negligence, fraudulent misrepresentations, violations of consumer protection statutes, and violations of seed laws. On June 3, 1982, the state court ordered entry of summary judgment for RBA on claims based upon breach of implied warranty, strict liability and common law negligence. Claims of breach of express warranty, of violations of seed laws and consumer protection statutes, and of fraudulent misrepresentation remained viable.

On June 25, 1982, RBA and Farmers entered into a Stipulation of Settlement of the state court action. The Stipulation provided for entry of judgment against RBA in a stated amount for each Farmer, totalling $1,100,000.00, but provided that the Farmers could recover a total of only $12,-000.00 from RBA's uninsured assets in the

event that it was determined that RBA had insurance coverage or in the event that this Declaratory Judgment action was settled by payment of any amount by Underwriters, and that Farmers could recover only $95,000.00 from RBA's uninsured assets in the event that it was determined that RBA did not have insurance coverage for Farmers' claims. The agreement also provided that judgment in the state court would be entered after rendition of a final judgment declaring that Underwriters had provided coverage for the claims, or some of them, set forth in the Complaint, that, if it was determined that insurance coverage was afforded for Farmers' claims, the judgment would be enforced by garnishment proceedings, and that, if Farmers did not recover in a garnishment proceedings, recovery against RBA's uninsured assets would be limited to $12,000.00. The agreement was made subject to approval of the Bankruptcy Court.

On July 7, 1982, hearing on an application for approval of the Settlement was convened by the Bankruptcy Court. At that time, counsel for RBA made it clear that approval of the settlement was sought only insofar as it affected RBA's uninsured assets. Counsel for RBA represented that, if Farmers prevailed in this declaratory judgment action, questions of reasonableness of the settlement and of fraud or collusion in affecting the settlement would be litigated in a subsequent garnishment proceeding. *Trans. p. 9.* The Bankruptcy Court approved the Stipulation of Settlement on that day.

On October 15, 1982, a hearing was convened in state court. The purpose of the hearing, as expressed by counsel for Farmers, was to produce proof relating to cooperation between RBA and the insurer, fraud and collusion between Farmers and RBA, and the reasonableness of the settlement. *State Court Trans. p. 4.* Counsel for Farmers made statements to the Court, but all evidence was documentary or adduced through testimony of a lawyer from Robins, Zelle. At the conclusion of the hearing, the Court instructed counsel for Farmers to prepare a proposed order covering the matter heard, without further instruction or guidance.

On November 23, 1982, the state court signed an Order prepared by counsel for Farmers. The Order bore the United States Bankruptcy Court caption, and contained Findings of Fact and Conclusions of Law. By executing this Order, the state court, among other things, found that RBA fully cooperated with Underwriters, that there was no fraud or collusion between RBA and Farmers, and that the settlement was reasonable. The Court concluded that Underwriters had reasonable notice and an opportunity to be heard, had failed to appear, that RBA had cooperated fully with its insurer, that the Stipulation of Settlement was not fraudulent or collusive, and that the Stipulation of Settlement was reasonable and prudent. Three things, besides the caption, are noteworthy in this Order, drafted by counsel for Farmers. First, emphasis in the Findings and Conclusions placed upon Underwriters opportunity to be heard, and failure to appear, clearly indicates an attempt to bind Underwriters to the provisions of the Order by waiver and to foreclose relitigation of issues of cooperation, fraud, collusion or reasonableness of the settlement. Second, is the statement that "The Court on a prior motion for summary judgment, ruled that Plaintiffs would be left with a claim for breach of warranty." Actually, that Order preserved Farmers' claims of breach of express warranties, fraudulent misrepresentation, violations of consumer protection statutes, and violations of state and federal seed laws as grounds for recovery. This portion of the Findings is an attempt to limit the judgment, to a theory of recovery which was not excluded from coverage. At that time, the coverage issues were being litigated in this Court. The Order then, in contravention of terms of the Stipulation of Settlement, ordered that the Stipulation be in all respects a judgment against RBA and ordered entry of judgment accordingly. This provision was also prepared by counsel for Farmers. The intent must have been to present this Court with a fait ac-

compli, with res judicata effect, as a defense in this action.

On November 23, 1982, Farmers filed an Answer to plaintiff's Amended Complaint in which, as paragraph XV, the state court's approval of the Stipulation of Settlement, and its Findings of Fact, Conclusions of Law and Order for Judgment, were alleged as an affirmative defense.

On November 26, 1982, the clerk of the state court entered judgment against RBA.

Thereafter, with leave of court, plaintiff filed a Second Amended Complaint which added, as Count II, an allegation that RBA had violated the condition of the policy prohibiting an insured from settling a claim for an amount in excess of the deductible amount without written consent of the insurer, and, as Count III, that, after March 10, 1982, RBA had violated a condition of the policy requiring the insured to render reasonable cooperation and assistance in defense of a suit.

On February 23, 1984, Farmers interposed an Answer to the Second Amended Complaint and alleged, as an affirmative defense, that the state court's approval of the Settlement agreement was binding on the issue of damages, and that, by failure to appear in state court proceedings, plaintiff had waived and was estopped and barred from asserting breach of duty to cooperate or collusion between Farmers and RBA, as a basis for denial of coverage; and alleged, as a counterclaim, that Counts II and III were frivolous and interposed in bad faith.

### III.

In the post-trial motions, plaintiff contends that the effort to establish the binding effect of the stipulated judgment, and that the entry of the judgment, in what amounted to an ex parte proceeding, was an attempt to defraud plaintiff by creating insurance coverage where none existed by misuse of the state court, that assertion of the judgment as an affirmative defense was improper, and that counsel, by signing pleadings and briefs, in support or in opposition of motions concerning the affirmative defenses, violated Title 28 U.S.C.

§ 1927, and Rule 11 and Rule 56(g), Federal Rules of Civil Procedure. RBA contends that the assertion of Counts II and III in the Second Amended Complaint lacked plausible legal or factual basis and was frivolous, unreasonable and baseless.

Title 28 U.S.C. § 1927 permits a court to assess excess fees and costs directly against an attorney responsible for unreasonable and vexatious multiplication of proceedings. The statute is in derogation of the traditional American concern with fee shifting, is penal in nature, and must be construed and applied on a rather stringent standard. It should be utilized only in instances of egregious disregard for orderly judicial process which demonstrate an intentional departure from acceptable professional conduct or a reckless indifference to professional duty. *Cf., Drieling v. Peugot Motors of America, Inc.,* 768 F.2d 1159 (10th Cir.1985); *Overnite Transp. Co. v. Chicago Indus. Tire Co.,* 697 F.2d 789 (7th Cir.1983); *United States v. Ross,* 535 F.2d 346 (6th Cir.1976); *Kiefel v. Las Vegas Hacienda, Inc.,* 404 F.2d 1163 (7th Cir. 1968), *cert. den. sub. nom., Hubbard v. Kiefel,* 395 U.S. 908, 89 S.Ct. 1750, 23 L.Ed.2d 221 (1969), *reh'g. den.* 395 U.S. 987, 89 S.Ct. 2128, 23 L.Ed.2d 776 (1969). The statute is not directed towards an attorney who merely asserts and pursues a meritless claim, but towards the assertion and pursuit of claims without plausible legal or factual basis and wholly lacking in legal justification. *Cf., Knorr Brake Corp. v. Harbil, Inc.,* 738 F.2d 223 (7th Cir.1984). The Court must act to punish the dissipation of time, effort and money in the disposition of spurious claims manufactured from whole cloth, but must be wary of chilling aggressive, imaginative and good faith assertion of innovative claims and legal theories. The statute is directed towards intentional reprehensible conduct, and a court must concentrate on ascertaining motivation. A course of conduct which is vindictive, obdurate or characterized by mala fides supports an inference of punishable bad faith. A course of conduct which is merely misdirected or ill-advised does not. Obviously a court is hard put to draw

a sharp line of demarcation between legitimate, albeit imperfect, advocacy, and patently frivolous positions assumed to harass, delay or vex. They are separated by a grey area of some dimension. As in all applications for an award of attorney's fees against an opposing party, difficult factual, legal and policy issues are posed. To an extent, a court must delve into the unfathomable recesses of a party's or counsel's mind, and must avoid the temptation to indulge in determination by hindsight.

Rule 11, Federal Rules of Civil Procedure, involves less subjective criteria. The Rule constitutes the signature of an attorney, on a pleading, motion or other paper, a certification by that attorney that, to the best of his knowledge, information and belief formed after reasonable inquiry, the pleading, motion or other paper is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, and that it is not interposed for any improper purpose, e.g., to harass, cause unnecessary delay or needlessly increase the cost of litigation.

The pre-signature obligations imposed upon an attorney are judged by an objective standard. The Court must determine whether or not the lawyer made an inquiry which is reasonable under the circumstances, and whether or not a reasonable inquiry would support a belief that the pleading or other paper is well grounded in fact and warranted by law. The Court need not find willful disregard of the Rule, and need not be concerned with subjective intent.

Rule 56(g), Federal Rules of Civil Procedure, permits a court to assess costs against a party who, in opposition to a motion for summary judgment, presents affidavits in bad faith or solely for purposes of delay.

IV.

We must measure the conduct of RBA and of plaintiff against the statute and rules in context of this case. The Complaint, filed May 14, 1982, raised issues of RBA's violation of state and federal seed laws and of intentional fraudulent misrepresentation. Thereafter, RBA and Farmers entered into the Stipulation of Settlement of the state court action, and Farmers proceeded to have judgment entered. This post-settlement action precipitated the amendments to the Complaint in which plaintiff alleged that the violation of the no-settlement and duty to cooperate clauses of the insurance contracts. Evaluation of the parties' positions depends upon the applicability of precepts enunciated in *Miller v. Shugart*, 316 N.W.2d 729 (Minn. 1982), and we must commence by again engaging in an analysis of the teaching of that case. In *Miller v. Shugart*, the insured owner of an automobile settled with an injured plaintiff, for an amount in excess of policy limits, while the insurer and insured were litigating the question of insurance coverage for liability of the driver of the automobile. A judgment entered by stipulation, provided that it could be enforced only against proceeds of an applicable insurance policy. After a determination that the driver was covered by the insurance policy, the injured plaintiff commenced garnishment proceedings against the insurance company. The Court held that the insured did not breach the duty to cooperate with the insurer by settling with the claimant prior to the determination of the coverage issue, but recognized that a judgment by stipulation between the insured and a claimant is not building upon the insurer if it is tainted by fraud or collusion or is not reasonable or prudent. To negate the conclusiveness of the judgment, the insurer has the burden of proving fraud or collusion, and, to establish the conclusiveness of the judgment, the claimant must prove that the settlement was reasonable and prudent. The insurer must be given an opportunity to litigate these issues. *Id.* at 736. In *Miller v. Shugart*, the issues were determined on a motion for summary judgment in a garnishment proceeding, but other procedural options are available. *Id.* at 733, n. 3.

RBA and Farmers originally agreed that judgment upon the Stipulation of Settlement would not be entered until after the

coverage issue was determined, and that enforcement, if coverage was established, would be through garnishment proceedings against the insurer. The insurer was put on notice of this contemplated procedure by the Stipulation of Settlement and through the presentation made to the Bankruptcy Court by Farmers and RBA in presence of counsel for the insurer. Farmers deviated from this procedure, and the only logical reason for doing so is the one proffered by plaintiff—that the Farmers, who were the only persons who stood to gain, were attempting to legally bind the insurer to the stipulated settlement and judgment on a theory of recovery for which insurance was afforded. That this would raise the hackles of the insurer is hardly surprising, and an inference of fraud, collusion, unreasonableness and imprudence of the settlement was not an unreasonable reaction. Even if one accepts the proposition that a *Miller/Shugart* settlement does not, in and of itself, constitute a breach of the no-settlement and cooperation clauses of a liability insurance contract, it does not necessarily follow that a settlement which is fraudulent, collusive, unreasonable, imprudent, or otherwise improperly maneuvered could not. One can foresee a situation where a settlement is set aside on all or one of these grounds. The Minnesota Court has not specifically foreclosed an insurer from raising an insured's misfeasance or malfeasance in affecting a settlement as breach of policy terms. Thus far, the Court has considered the insured's conduct only insofar as it affects the legitimacy of the settlement vis-a-vis the insurer. It is hard to believe that this limited consideration carries an implication that an insured can attempt to defraud an insurance company with impunity, save for erasing its immediate effect.

■ Secondly, we cannot overlook the type of insurance involved. The policy in *Miller v. Shugart* was an automobile liability policy which obligated the insurer to pay a claimant the amount which the insured was legally obligated to pay. This is insurance against liability. The contracts here are indemnity policies, which obligate the insurer to reimburse the insured for payments actually made to a claimant. This is insurance against loss. This distinction is of import. In the liability insurance context, a non-collusive, non-fraudulent and prudent *Miller/Shugart* settlement determines the amount of the insured's liability, which, in turn, measures the amount that the insurer is contractually obligated to pay on the insured's behalf. In the indemnity policy context, a valid *Miller/Shugart* settlement does not determine the amount which the insured actually pays and to which he is contractually entitled to reimbursement from the insurer. The distinction is graphically illustrated in this case. The settlement was calculated on the basis of claims involving four seed lots. The policies contained a $30,000.00 deductible per seed lot, and RBA's deductible totaled $120,000.00. The plan of reorganization confirmed by the Bankruptcy Court provided for 10% payment to unsecured creditors. If coverage existed, therefore, the settlement agreement bound RBA to pay only $12,000.00, but provided for payment by the insurer of over a million dollars. In other words, the intent was to bind the insurer to indemnify RBA for an amount in excess of RBA's loss. An attempt to recover more than policy limits from the insurer presents an issue of fraud or collusion. *Miller v. Shugart, supra* 734, n. 5. There certainly is serious question of whether or not the holding of *Miller/Shugart* reach this factual situation, and of whether or not an attempt to bind the insurer to indemnify the insured for an amount it did not actually pay is fraud or breached policy provisions. This Court's ultimate ruling was only that the settlement, in an of itself, did not violate the cooperation provisions of the policy. Whether or not the settlement was collusive, fraudulent or, under the circumstances, including the nature of the policy, was prudent, was reserved for later determination in an action to determine the binding effect of the stipulated judgment. Whether or not a fraudulent settlement could be a breach of policy provisions was relegated to academic interest until that determination was made.

Insofar as asserting the state court judgment as a defense, in this action, this Court was, and is, of the firm conviction that the binding effect of a stipulated judgment entered pursuant to a *Miller/Shugart* settlement must be determined in a derivative proceeding to which the insurer is a party. The insured is not a necessary party to this litigation for its liability is established by the settlement which, in effect, substitutes claimants for the insured in a claim against the insurer, but this Court finds no authority which establishes as valid a determination of the binding effect of a stipulated judgment in a proceeding to which the insurer is not a party, and, indeed, finds the proposition constitutionally repugnant. The Court made it quite clear, therefore, on several occasions, that the determinative effect of the state court proceedings was suspect, but it retained, temporarily, the defense, based upon the *Miller/Shugart* proceedings, for possible determination in this litigation. On December 21, 1983, the Court denied plaintiff's motion to strike the defense, and observed that the state court judgment bound RBA, but that it could not affect plaintiff until coverage was established; that the defense might or might not be litigated in this case, that facts bearing on the defense would probably be explored in discovery; that no good reason for relegating the issues to another trial had been proffered; and that if the fact allegations were later shown to be surplusage, nothing was lost by retaining them until that time. In an Order entered on June 7, 1984, virtually the same position was reiterated. On November 2, 1984, after settlement efforts appeared futile and trial was imminent, the Court granted a renewed motion to strike the allegations and stated:

"... the binding effect of the judgment by stipulation and the state court order, must be litigated by the individual farmers in an action, preferably in state court, against the insurer."

The Farmers were armed with a state court judgment. This Court could not conscientiously condone the post-settlement proceedings resulting in entry of that judgment, nor could it accept the judgment as a determinative defense to the coverage questions, but raising the defense placed in issue matters which the parties were entitled to litigate. The procedural course which must be followed to effect this litigation is not so well charted that this Court was prepared to rule that the issues could only be tried in a supplemental garnishment proceeding. In a case involving a single claimant in a similar posture, this Court can foresee no insurmountable problems ensuing from a conversion of the affirmative defense into a counterclaim, and trying the binding effect of the stipulated judgment along with trial of the coverage issue. The Court toyed with adoption of this format, but abandoned the idea. Here we have over 40 claimants. Combining trial of the fraud and collusion issues with trial of the coverage issues would not greatly magnify the proceedings. Evidence on fraud and collusion would apply generally to all farmers. Trial of the issues of reasonableness and prudence of the settlement, however, would require introduction of evidence supporting the amount of the settlement with each individual farmer. This would be time consuming and complicated. In the interests of judicial economy and attaining justice, it seemed wise to avoid this complication of the trial, just in case, as it turned out, determination of the coverage issue rendered the issue of the binding effect of the stipulated judgment moot. In light of the manner in which the judgment was obtained, asserting it as a determinative defense was technically ill-conceived. However, legal and factual issues which are inherent in the defense required determination through litigation at some time. It was not patently improper to raise the issues in this case. Mere technical improficiency falls short of conduct warranting imposition of a severe penalty. By the time the relevant pleadings, and motions pertaining to those pleadings, were filed, counsel had been forced to make in-depth inquiry. *Miller v. Shugart* has introduced a precept into the law which has not been fully explored or developed. The peripheral substantive and procedural issues not

definitively answered by *Miller v. Shugart* warranted what appear to be directly contra beliefs on controlling law, and there is no indication that plaintiff or RBA filed a pleading, motion or other paper for any purpose other than to support a position which was more than colorable when viewed objectively. Neither party advanced a claim in this litigation which was totally unreasonable factually, entirely lacking in legal justification, or demonstrably in bad faith.

▆▆ It is fair to observe at this time that plaintiff devoted an appreciable portion of argument and brief submitted in support of this motion to discussion of fraud and collusion and the prudence and reasonableness of the Settlement agreement. Obviously counsel was well prepared to litigate these issues, and, understandably, did not wish to relegate these efforts to a dead file. However, the issues no longer comprise a justiciable controversy. Plaintiff, has prevailed on the primary issues, and is not entitled to reimbursement for fees and expenses incurred in preparation for litigation of secondary issues which have been rendered moot by determination of the primary issues. Besides, this Court does not consider a post-trial motion for an award of attorney's fees and costs in this action as an optional procedural vehicle for litigating fraud, collusion or reasonableness of the settlement proceedings.

### V.

The second major facet of Underwriters' motion is concerned with problems experienced in the discovery process. The Court previously reserved ruling on plaintiff's motions for costs for Farmers' failure to abide by discovery rules, while commenting unfavorably upon Farmers' conduct, and the motions are properly renewed at this time.

### a.

Underwriters seek an award of attorney's fees and costs incurred in pursuing motions for orders compelling Farmers to submit individual responses to Requests for Admissions and individual Answers to Interrogatories.

In July, 1982, Underwriters served Interrogatories and Requests for Admissions upon Farmers.

Rule 36(a) establishes 30 days from service of the Request or 45 days from service of the Summons and Complaint, whichever is longer, as the time within which response to a Request for Admissions, signed by a party or an attorney, must be made. The mandatory contents of the response are reasonably well delineated:

a. An objection must be accompanied by reasons for the objection.

b. An answer must specifically deny the matter or set forth in detail the reason why the party cannot truthfully admit or deny the matter.

c. The lack of information or knowledge is not an acceptable reason for failure to admit or deny, unless it is affirmatively stated that reasonable inquiry has been made and information known or readily obtainable is insufficient to enable the party to admit or deny.

d. A denial shall fairly meet the substance of the requested admission, and when good faith requires a party to qualify his response or partially deny the request he shall specify the part of the request which he admits and deny or qualify the remainder.

These requirements are easily understood, and when properly observed the last instruction will eliminate quibbling over semantics.

Rule 33 requires that Interrogatories be answered separately and fully in writing under oath by the party to whom they are propounded, within the same 30 or 45 day time frame, and that objections to an Interrogatory must be accompanied by reasons for the objection and must be signed by the attorney.

On August 2, 1982, counsel for Farmers served a single, collective response to the Requests for Admissions. This response was signed by counsel. The response, in this form, did not comply with Rule 36, and, additionally, the responses did not fairly meet the substance of the Requests for Admissions.

On September 7, 1982, counsel for Farmers served single collective Answers to Interrogatories, unsworn, and signed by counsel. The Answers in this form did not comply with Rule 33, and the Answers were drafted in a manner which avoided directly answering the Interrogatories.

Underwriters filed several motions to compel Farmers to properly respond. Prior to hearing, Farmers agreed to individually answer certain of the Interrogatories, and on December 21, 1982, the Bankruptcy Court ordered Farmers to individually respond to four of the Requests for Admissions.

Farmers failed to respect the agreement or to comply with the Order until March 19, 1984, when responses and answers for the majority of Farmers were served. Interestingly, some of the responses and answers had evidently been prepared and signed during the summer of 1983. Even so, the responses and answers were again abstruse and failed to meet the substance of the requests or directly answer the Interrogatories.

Pursuant to motions, this Court, on June 5, 1984, in the interests of justice, entered an Order deeming the service of the Answers and Responses timely and permitting them to stand.

On June 18, 1984, this Court entered an Order directing the Farmer still in default in the discovery proceeding to answer Interrogatories and respond to Requests for Admissions within 10 days.

Farmers' defense to this motion is that all discovery in the state court action was available to plaintiff, by agreement, that discovery was in abeyance from January 6, 1983 to December, 1983, pending disposition of dispositive motions, and that plaintiff had indicated that the written discovery requests were only preliminary to discovery by oral deposition of each farmer. The Bankruptcy Court Order was issued on December 21, 1982. Even if, as Farmers represent, discovery was suspended from January to December, 1983, by agreement, responses were not provided until March, 1984. As the Court observed in its Order of June 18, 1984, it is not persuaded that

there was good reason for failure to comply with the Order of the Bankruptcy Court.

There is nothing concrete to establish an agreement or that plaintiff had access to discovery conducted in state court. Regardless, the record indicates that the early responses to discovery requests in state court were not in compliance with form or content requirements of the state discovery rules, and, in any event, prior discovery by RBA in state court was not identical to the discovery sought by the insurer in this case and state court discovery did not suspend or supersede the federal rules. Farmers had distinct obligations in this litigation, and could not shunt these obligations to plaintiff by reference to proceedings in other litigation.

The final excuse proffered by Farmers is frivolous. Propounding Interrogatories and serving Requests for Admissions to obtain information to prepare for deposing a party is a well established and permissible tactic. A litigant has no right to attempt to dictate the form or manner in which an opposing party conducts discovery.

The Court is not persuaded that any of these averments is justification for failure to comply with the Federal Rules of Civil Procedure and the Bankruptcy Court Order. This Court, with benefit of evidence produced during two lengthy trials, can understand the position in which Farmers had placed themselves which motivated delay and obfuscation. In state court, Farmers had made allegations and representations which had negative impact on insurance coverage. Consistency and candor would decimate their defense to this Declaratory Judgment action. Farmers' recourse was to avoid responding as long as possible, and then to resort to amphibole when forced to respond. Illustration of the manner in which Farmers responded to Requests for Admissions is contained in the following section of this Memorandum Order, and only brief reference to response to interrogatories is necessary.

Interrogatory No. 4 asked Farmers to identify state and federal statutes which, in the state court action, they had alleged that RBA violated. The original answer was that none of the Farmers had alleged that RBA had violated a state or federal law, but that their attorneys had included the allegation as an alternative pleading. A supplemental Answer was that the farmer had no personal knowledge of any particular state or federal statute. Interrogatory No. 5 asked for the representations which induced purchase of Mr. Gold. The Answer originally was a representation that they could expect a yield of 3,000 pounds under reasonably good farming conditions. A supplemental Answer simply referred counsel to unspecified Response to Requests for Admissions. In answer to Interrogatory No. 4, Farmers, rather gratuitously, stated that RBA's advertising had lead them to believe that they would get a 3,000 pound yield, they did not, and that such advertising was false or misleading. Prior thereto, in Answers to Interrogatories propounded by RBA in the state court action in which Farmers were plaintiffs, Farmers, without exception, averred that they had relied upon representations of yield contained in various RBA advertisements, literature and brochures which ranged from 3,000 to 5,000 pounds per acre. These may not be the best examples of a lack of timely, straightforward, unambiguous adherence to the letter and spirit of discovery rules. Other instances abound, and evidence a general indifference to discovery rules, avoidance of obligation, and a rather casual approach to duties to Court and opposing counsel.

■■■ Responses to Requests for Admission must fairly meet the substance of the request, and Answers to Interrogatories must be responsive, full, unevasive and complete within themselves. Material outside of the answers may not be incorporated by reference, and incorporation within answers must be specific. *Pilling v. General Motors Corp.*, 45 F.R.D. 366 (Utah 1968); *J.J. Delaney Carpet Co. v. Forrest Mills, Inc.*, 34 F.R.D. 152 (N.Y.1963). A party must disclose facts in his attorney's possession as well as his own. *Hickman v.*

*Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). The aim is revelation with complete candor. Counsel was in an uncomfortable position, but this does not justify thwarting purposes of discovery, and forcing plaintiff to proof of matters which proper discovery response would have established as non-issues. The totality of unacceptable conduct justifies imposition of sanctions. *See, e.g., Olga's Kitchen of Hayward, Inc. v. Papo*, 108 F.R.D. 695 (Mich.1985). Plaintiff is entitled to an award to defray fees incurred in attempting to enforce timely and meaningful discovery.

b.

■■■ Plaintiff seeks an award to defray fees and costs incurred in proving matters which Farmers had been requested to admit, but denied, and which were proven at trial.

Rule 37(c), Federal Rules of Civil Procedure, provides that if a party fails to admit the truth of a matter which he is requested to admit, and the requesting party proves the matter at trial, the court shall order that party to pay the requesting party the reasonable expense incurred in proving the matter, unless it finds that:

1. the request was held objectionable, or

2. the admission sought was of no substantial importance, or

3. the party failing to admit had reasonable ground to believe that he might prevail on the matter, or

4. there was other good cause for failure to admit.

Plaintiff's motion is directed towards responses to Requests No. 7, 8, 9 and 10. Request No. 7 was:

"Admit that you relied on RBA's representations that Mr. Gold was a new hybrid sunflower variety when you purchased Mr. Gold for the 1978 crop year."

The initial response was:

"RESPONSE TO REQUEST NO. 7: Deny. Again the problem is the meaning of the word 'new'. In general, however,

we believe the seed had been produced at least one year.

During the time in question, there were many new brand names and varieties of sunflower seeds on the market. The hybrids had just been introduced in the years immediately prior to 1977, and there were new varieties and new names for other varieties which perhaps indicated slight modifications, etc. We certainly believed that the RBA seeds were new in the sense that they were different from the traditional non-hybrid varieties."

Thereafter, Farmers served the following supplemental response:

"SUPPLEMENTAL RESPONSE TO REQUEST NO. 7:

The subject matter alluded to in Request No. 7 through 10 was covered in considerable detail in the individual interrogatories served upon each farmer by RBA, said interrogatories including 43 primary questions, many of which had numerous subquestions, and all of which were individually answered by the farmers. The undersigned further alleges that he believes that there is no possible way that the individual farmers can properly respond to these Requests for Admissions, which ask them to set forth their state of mind as to what they relied upon in making their purchase of RBA seeds five years ago. *What is meant by the word 'rely' requires further clarification and definition.* The collective answers given in response to the original Requests for Admissions, combined with the transcripts of the individual farmers' depositions and the answers given by each farmer to the original interrogatories are full and complete answers to these Requests for Admissions. [Underlining added]"

And, finally, the responses were supplemented thusly:

"RESPONSE TO REQUEST NO. 7: Denied. See RBA Interrogatory Answers # 37 and # 27 and various parts of my deposition. Whether or not Mr. Gold was a 'new' hybrid sunflower variety was not a significant concern of mine when I purchased Mr. Gold.

I made my decision to buy Mr. Golds [sic] primarily based on the RBA representations which led me to believe that I could reasonably expect to yield 3,000 pounds an acre if I used good farming practices and had reasonable growing conditions."

If we examine the request and the subsequent responses, we easily discern unacceptable pettifoggery. Farmers first quibble over the meaning of the word new, but aver that the seed was of relatively recent origin and new in the sense of being different than non-hybrid varieties. Next, they assert that "rely" requires clarification and definition, and aver that they cannot set forth their state of mind at time of purchase, although it was an essential element of their claims against RBA, and refer to unspecified Answers to Interrogatories and general deposition testimony for full and complete response. Finally, the denial is unequivocal, but followed by equivocal qualification. The Court has laboriously reviewed its notes of testimony and reexamined exhibits. The advertisement and circulars which the Farmers admitted seeing, in varying extent, prior to purchasing the seed invariably featured the word "new". When asked at trial, each farmer admitted that he knew that the 1978 growing season was the first for which the seed was marketed. That the seed was represented to be a new hybrid in every sense of the word is patent. No good reason for equivocation existed. Reliance is a fact question, but to state that the representation that the seed was new—either to the market or in pedigree—was of no concern, begs reason. The newness of the seed goes hand in hand with yield representations of which every single Farmer testified he was aware.

Related are Requests No. 8, 9 and 10, concerning yield representations, which can be considered together.

"REQUEST NO. 8: Admit that you relied on RBA's representation that Mr. Gold could be expected to yield 4,000 pounds per acre in good soil in good conditions when you purchased Mr. Gold seed for the 1978 crop year.

REQUEST NO. 9: Admit that you relied on RBA's representations that Mr. Gold would yield 2,000 to 3,000 pounds even in marginal soils under survival conditions when you purchased Mr. Gold for the 1978 crop year.

REQUEST NO. 10: Admit that you relied on RBA's representations that Mr. Gold had a yield potential of 5,000 pounds per acre when you purchased Mr. Gold for the 1978 crop year."

Initially, Farmers' responded:

"RESPONSE TO REQUEST NO. 8: Denied. While we recognized the RBA advertising indicated a potential of up to 4,000 and 5,000 pounds per acre, we did not expect yields of that amount.

RESPONSE TO REQUEST NO. 9: Denied. First, this request appears to be a misquote of the RBA advertising. Some of us perhaps read advertising which indicated that in marginal soils Mr. Gold would yield 2,000 to 3,000 pounds per acre. None of us feel we relied on that statement at all in that we did not plant our RBA seeds in marginal soils.

RESPONSE TO REQUEST NO. 10: Denied. See further our response to Request No. 8 which is adopted here by reference. In addition, we considered claims of yield potential of 4,000 to 5,000 pounds per acre as advertising and not as any type of assurance. Further, we are aware that this was national advertising, and we did not expect yields of 4,000 pounds, much less 5,000 pounds."

Supplemental responses were:

"SUPPLEMENTAL RESPONSE TO REQUEST NO. 8:

See Response to No. 7 above. In addition, Farmers allege that they never received any such representations from RBA.

SUPPLEMENTAL RESPONSE TO REQUEST NO. 9:

See Response to No. 7 above. In addition, Farmers allege that RBA did not make a representation as stated in this Request for Admission—that is that the Request for Admission contains a material misquote of the advertising representation which was made by RBA.

SUPPLEMENTAL RESPONSE TO REQUEST NO. 10:

See Response to No. 7 above."

Final responses were:

"RESPONSE TO REQUEST NO. 8: Denied. I do not recall any written representations made by RBA that Mr. Gold could be expected to yield 4,000 pounds per acre.

RESPONSE TO REQUEST NO. 9: Denied. I did not rely on such a representation. Basically, I relied on the RBA representations that Mr. Gold could be reasonably expected to yield 3,000 pounds per acre assuming I used good farming practices and had reasonably good growing conditions for that particular crop year.

RESPONSE TO REQUEST NO. 10. Denied. Again, I did not rely on such written representations by RBA but rather relied on the representations that I could reasonably expect to yield 3,000 pounds per acre assuming I used good farming practices and had reasonably good growing conditions."

First, in regard to the alleged misstatement of the RBA representation contained in Request No. 9. In May, 1982, Farmers' counsel attached to a memorandum, submitted to the state court in opposition to a motion for summary judgment, an RBA advertisement which stated:

"Give it a 'survival test' in marginal soils and MR GOLD still yields 2,000 to 3,000-lbs. per acre."

The difference between the paraphrase and the language of the advertisement was hardly grounds for equivocation. Anyone with any perception who had used the advertisement to support a position would have recognized the advertisement to which the request referred in an instant. In any event, denial of the literal accuracy of the advertisement is not a denial of its essential truth, *cf., Southern Ry. Co. v. Crosby*, 201 F.2d 878 (4th Cir.1953), and was not a proper response. The request is for an admission of reliance upon a representation that Mr. Gold would yield 2,000 to 3,000 pounds per acre even in marginal

soil. The survival condition qualification in no way changed the thrust of the inquiry. There was nothing about the request which made a direct admission or denial difficult.

If we examine the substance of all of these responses, we detect that each is carefully tailored to refer to written or printed advertisements. The requests encompass all representations, oral and written. The responses also, to a large extent, referred to expectation of yield, not to RBA's representations of potential yield. Again, an attempt to avoid a damaging admission. At trial, however, each farmer testified to seeing or hearing all or some of the precise yield representations for which admissions were requested, and all of them testified to receiving, hearing or seeing oral or written representations of yield ranging from 2,000 to 5,000 pounds per acre. They testified that each evaluated the representations, and purchased the seed with expectations of a 3;000 pound per acre yield. One must marvel at the uniformity of soil, parity of farming practices and equality of expertise of farmers in this area of Minnesota which produced this unanimity. Regardless, it was established at trial that each farmer's purchase of seed was based upon his yield expectation, which was, in turn, based upon all, or some, of RBA's representations of yield upon which they had been requested to admit they relied. That each farmer discounted the representation of magnitude of yield to an identical amount, for whatever reason, went to the degree of reliance, not to the fact of reliance. The Rule requires that responses to Requests for Admission be forthright, specific and unconditional to fairly meet the substance of the request. *United States v. American Tel. & Tel. Co.*, 83 F.R.D. 323 (D.C.1979). There is no room for semantic exercises or other games which artful lawyers play. It is now apparent, Farmers avoided admitting reliance on representations of yield potential for which admissions were requested by taking the position that they never really expected to achieve the maximum yield represented, but, that in reliance on the representation of maximum yield expected something less, but something more than the yield attained

by any other seed. This borders on chicanery. Had each farmer candidly disclosed, by admission, which representations he had relied upon in projecting an expected yield, as was later established at trial through cross-examination, a great deal of time and effort of Court and counsel would have been conserved. None of the circumstances which absolve an offending party of responsibility appear, and Farmers must accept the consequences of failing to admit undeniable facts which were later proven at trial.

## VI.

Plaintiff seeks an award to defray attorney's fees and costs incurred in obtaining discovery of documents from Robins, Zelle, Larson and Kaplan, formerly counsel for RBA.

The differences of opinion which precipitated discovery disputes between plaintiff and Robins, Zelle is attributable to simultaneous representation of both insurer and the insured by Robins, Zelle and by Lord, Bissell & Brook. The arrangement was pregnant with potential for conflict of interest inherent in the insurer's participation in the defense of the Farmers' state court action subject to a reservation of rights. The potential became reality when facts unearthed during discovery prompted the insurer to raise the coverage issues. In March, 1982, Lord, Bissell & Brook informed RBA that henceforth Lord, Bissell & Brook would represent the insurer's interests, exclusively, and that Robins, Zelle would represent RBA's interests, exclusively. Thereafter, plaintiff served Requests for Production of Documents upon RBA. A substantial portion of the documents requested had been obtained, or generated, by Robins, Zelle in the course of preparation for defense of Farmers' state court suit. Robins, Zelle resisted the discovery of documents, on a number of grounds, and motions to compel discovery were filed.

On June 5, 1982, this Court entered an Order which established the breadth and scope of attorney-client privilege and work product immunity which Robins, Zelle en-

joyed, and directed production of certain documents.

On June 8, 1984, pursuant to motion, the Court entered a supplemental Order which sustained certain objections to production of documents raised by RBA, and specifically directed production of other documents and classes of documents. No further discovery disputes were placed before the Court.

#### a.

The first facet of plaintiff's motion is directed towards the documents which were the subject of motion, and of this Court's Order of June 8, 1984. The thrust of plaintiff's contention seems to be Robins, Zelle misrepresented or concealed facts which lead the Court to an erroneous determination of the discovery dispute. The Court finds nothing persuasive in representations made to support this contention. Robins, Zelle's primary allegiance was to RBA. It was in the unenviable position of adherence to this allegiance to its client, with one hand, and complying with the letter and spirit of discovery rules vis-a-vis the insurer, with the other. The insurer was equally responsible for the dichotomy, and it cannot be gainsaid that if counsel errs it should be to his primary client's advantage. Withholding information from the insurer is correctable and was corrected. Unauthorized release of information is far more difficult to remedy. The lawyers representing RBA are not strangers to discovery disputes of almost unprecedented magnitude in this Court. When doubt arose, the discovery was quite properly resisted as the Rules provide. RBA was partially successful in resisting discovery, and, when unsuccessful, abided by this Court's discovery orders. No grounds for penalizing RBA or counsel are present.

#### b.

The second facet of the motion concerns RBA's attempts to restrict plaintiff's access to documents in possession of the United States Department of Agriculture. On October 25, 1983, plaintiff requested these documents pursuant to the Freedom of Information Act. RBA objected on grounds that the documents contained trade secrets and other privileged information. Plaintiff commenced an action, and eventually obtained the documents. Plaintiff's position seems to be that Robins, Zelle provided the Department of Agriculture with false and misleading information which prompted its resistance to the demand under provisions of the FOIA, and forced plaintiff to commence suit. Counsel merely characterizing information does not establish its character. Proof of falsity is required. Good faith differences of opinion on what constitutes trade secrets or privileged information is not an unusual occurrence, and, when litigated, one opinion or the other is confirmed. Advocating a losing cause is not grounds for an award of attorney's fees in the absence of a showing, not empty accusation, of abuse of the judicial process. Aside from that, any contractual duty to cooperate with the insured disappeared when the insurer placed RBA in an adversarial position. RBA's duties were only those imposed by discovery rules which were not violated in this case by resisting FOIA disclosures. Any transgressions in the suit to force FOIA disclosures should be the subject of a proceeding in that suit, not dragged into this tangentially related action by this motion.

#### c.

■ Finally, plaintiff accuses RBA of concealing discoverable documents. After Stauffer acquired RBA, many records were transferred to a repository in Lone Tree, Iowa, including documents which plaintiff claimed were relevant to the Farmers' state court action. Plaintiff subpoenaed these documents. Robins, Zelle examined the documents for RBA, determined that they contained privileged information, and objected to producing them without a protective order. Plaintiff refused to stipulate to the entry of a protective order, and RBA filed a motion. The motion was never set for hearing, and the records were released to plaintiff on July 3, 1984. Again, this Court is unable to determine precisely what plaintiff now claim was improper. The two year delay in receiving these documents is equally attributable to RBA's resistance and to plaintiff's failure take steps to en-

force the right it claimed to this production. The discovery rules contemplate a demand and either acquiescence or objection. In the case of the latter, it is incumbent upon the party seeking discovery to initiate a proceeding for determination of the merits of the objection. If he fails to do so, he cannot later assert that the objections were without merit or interposed for an improper purpose to support a motion for an award of attorney's fees. Equally as important, this Court has been unable to obtain a satisfactory explanation of why, if the documents were relevant to the state court action and not to this action, this Court should even be concerned with the dispute.

WHEREFORE, It is—

ORDERED:

1. That plaintiff's motion for an award of costs and fees incurred in attempting to obtain timely and proper responses to discovery requests from Farmers shall be, and hereby is, granted.

2. That plaintiff's motion for an award of costs and fees incurred in proving the truth of matters encompassed by Requests for Admission served upon Farmers shall be, and hereby is, granted.

3. That plaintiff's motions shall be, and hereby are, in all other respects, denied.

4. That RBA's motion for an award of attorney's fees and costs shall be, and hereby is, denied.

5. That within 15 days of date hereof, counsel for plaintiff shall serve upon counsel for Farmers and file with the Court an itemized schedule of costs incurred for which an award is granted, together with supporting memorandum or documentation.

6. That within 10 days thereafter, counsel for Farmers shall respond by serving and filing a written memorandum.