**In re David A. RUSS, Debtor.**

**Bankruptcy No. 4–87–2332.**

United States Bankruptcy Court,
D. Minnesota.

March 9, 1998.

---

Faye Knowles, David Marshall, Fredrikson & Byron, Minneapolis, MN, for Debtor.

Kevin J. Lamson, Minneapolis, MN, pro se.

*MEMORANDUM ORDER*

NANCY C. DREHER, Bankruptcy Judge.

The above-entitled matter came on for hearing before the undersigned on the motion of Kevin J. Lamson ("Lamson") seeking sanctions against the Debtor and his attorneys, Faye Knowles ("Knowles") and David Marshall ("Marshall"), and requesting an order directing them to show cause why they should not be held in contempt of court. Appearances were noted in the record. After carefully considering the arguments of counsel and the record as presented, the Court has concluded that Lamson's motion should be denied and that Lamson should be ordered to pay the reasonable expenses and attorneys' fees incurred by the Debtor, Knowles and Marshall in opposing this motion.

## BACKGROUND [1]

This motion represents an attempt by Kevin J. Lamson to strike a final blow in the waning hours of a protracted legal battle that has waged between Lamson and the Debtor over the past several years. A complete account of the history of this case is too lengthy to reproduce in its entirety, and only those facts that are relevant to the disposition of the current motion are reproduced here.

On July 10, 1987, after several failed start-up business attempts, the Debtor filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code. At the time of the filing of the petition, the Debtor's Chapter 7 bankruptcy appeared to be a routine case with few nonexempt assets for distribution to the unsecured creditors. On his Schedule of Liabilities, the Debtor listed secured claims against the estate in the amount of $289,400.00, and unsecured claims in the amount of $610,130.65.[2] On his Schedule of Assets, the Debtor listed real property valued at $281,000.00, and personal property in the following amounts:

---

1. The facts and procedural history recounted in this opinion have been taken from a review of the entire bankruptcy file.

2. Proofs of claim were ultimately filed in the case in the following amounts: $190,308.65 in secured claims and $335,664.91 in unsecured claims.

| | |
|---|---|
| Household goods, supplies and furnishings | $4,500.00 |
| .12 gauge shotgun | 50.00 |
| 1972 JD Snowmobile | 25.00 |
| 1978 JD Snowmobile | 100.00 |
| 1984 Pontiac | 7,000.00 |
| 1986 Plymouth Voyager | 11,000.00 |
| 1978 Glastron 16 ft. boat with 90 hp. Merc and trailer | 1,000.00 |
| Rototiller | 50.00 |
| Computer | 4,000.00 |
| NW Mutual Life Insurance Policies | 1,000.00 |
| 100 Shares of International Broadcasting Company, Inc. | 0.00 |
| Total | $28,725.00 |

Of these assets, the Debtor listed the following property as exempt:

| | |
|---|---|
| Homestead located at 12120 54th Avenue North, Plymouth, Minnesota | $200,000.00 |
| Household goods | 4,500.00 |
| 1986 Plymouth Voyager | Nominal |
| Cash value of NW Mutual Life Insurance Policies | 1,000.00 |
| Total | $205,500.00 |

On October 14, 1987, the Debtor received his Chapter 7 discharge. Two years later, on June 14, 1989, the trustee filed a Final Report and Final Account After Distribution indicating that the assets of the estate were liquidated for the sum of $5,549.25, resulting in a 1.17% dividend rate to unsecured creditors after the payment of administrative expenses. On July 5, 1989, the trustee was discharged and the Debtor's bankruptcy case was closed.

After the closing of the Debtor's bankruptcy, Lamson and partners Neil Dolinsky and Bruce Hendry formed DLH, Inc. ("DLH") and began purchasing several of the claims held by various unsecured creditors of the bankruptcy estate. Soon thereafter, on July 24, 1993, Lamson filed an application to reopen the Debtor's bankruptcy case for the purpose of administering allegedly undisclosed assets of the bankruptcy estate. Specifically, Lamson alleged that at the time the Debtor filed his bankruptcy petition he was the owner of several shares of stock in Da-

mark International, Inc., which were never disclosed in his property schedules.[3] On August 12, 1993, this Court reopened the Debtor's bankruptcy case and ordered the reappointment of a trustee to investigate the existence of unadministered assets of the estate.

On March 16, 1994, this Court approved the sale of the estate's interest, if any, in the Damark stock to DLH for the sum of $350,000. Under the terms of the sale, the trustee and DLH agreed that the trustee would sell to DLH "as is, ... with no representation or warranties, all right, title and ownership interest in Damark International, Inc. or its stock which is currently property of the bankruptcy estate, and will assign to DLH, Inc. any and all of the estate's claims against David A. Russ ... relating to the ownership and/or transfer of stock in Damark International...."[4]

On August 21, 1996, Lamson filed a motion to strike the Debtor's original bankruptcy

3. Damark International, Inc. has grown to become a very successful business since the days of the Debtor's bankruptcy filing. Indeed, the shares of Damark stock alleged to be owned by the Debtor on the date of filing are worth millions of dollars today.

4. On March 25, 1994, DLH commenced a lawsuit in Minnesota state court against the Debtor,

Damark International and Mark Cohn seeking a declaratory judgment that DLH was the legal and equitable owner of 1.54 million shares of Damark stock. DLH also sought damages in the amount of $46,200,000 for conversion of the stock or, in the alternative, an order directing replevin of the 1.54 million shares in the possession or control of the Debtor, Cohn and Damark. The District Court entered summary judgment in

petition and schedules and to compel the Debtor to file an amended petition, Statement of Financial Affairs, and property schedules. On August 27, 1996, this Court granted Lamson's motion and ordered the Debtor to "prepare and file amendments to the Debtor's Voluntary Petition, Statement of Financial Affairs and Schedules so as to make them accurate as of the date of the filing of the petition. . . . "

On September 26, 1996, Lamson filed a motion seeking Rule 9011 sanctions against the Debtor's wife, Dianne Russ, "for her submission of sham pleadings and exhibits as well as affidavits containing false or perjured statements." On October 4, 1996, this Court denied Lamson's motion for sanctions because Lamson had failed to produce evidence to substantiate his claims. The Court's order stated, "The Lamson motion is procedurally defective. No adequate record has been made to sustain the allegations of a violation of Rule 9011, nor support an award of sanctions under 28 U.S.C. § 1927 or 11 U.S.C. § 105."

On October 28, 1996, the Debtor filed an amended Chapter 7 petition, Statement of Financial Affairs and property schedules.[5] In his amended papers, the Debtor completed a Statement of Financial Affairs for a Debtor Engaged in Business, in which he identified himself as an employee of Damark International, Inc. as of July 10, 1987 (but not a shareholder), as well as a former shareholder or former partner of several inactive or dissolved corporations and real estate partnerships.

On November 4, 1997, Lamson made a motion to compel the Debtor to more fully comply with the Court's August 27, 1996 order directing the Debtor to amend his schedules. In response to Lamson's motion, the Court ordered the Debtor to: (1) amend his property schedules to specifically describe his ownership interest in the various business entities listed in his amended Statement of Financial Affairs; and (2) amend his Statement of Financial Affairs to specifically identify each source of his personal income in the year 1986.[6] To comply with this order, the Debtor filed a second amended Chapter 7 petition, Statement of Financial Affairs and property schedules on December 12, 1997.[7] In his second amended property schedules, the Debtor stated that on July 10, 1987 he was the owner of worthless stock in four inactive corporations listed in his Statement of Financial Affairs that had not yet been dissolved as of that date, and that he had no ownership interest in any of the remaining entities. In his second amended Statement of Financial Affairs, the Debtor listed the specific sources of his personal income for the year 1986.

Finally, on January 16, 1998, Lamson filed the current motion seeking sanctions against the Debtor, Knowles and Marshall and requesting the Court to order them to appear and show cause why they should not be held in contempt of court. Specifically, Lamson argues that the Debtor and his attorneys should be sanctioned because the Debtor failed to disclose in his 1996 and 1997 amended petitions, statements of financial affairs and property schedules that the Debtor held ownership interests in at least seven different business entities on the date of the filing of his bankruptcy petition.

---

favor of the defendants and the Court of Appeals affirmed. On June 19, 1997, the Supreme Court of Minnesota affirmed, holding that the evidence showed that the Debtor did not own any Damark stock at the time he filed for bankruptcy on July 10, 1987 and that the bankruptcy estate therefore had no interest in the stock to assign to DLH. *See DLH, Inc. v. Russ*, 566 N.W.2d 60, 72–74 (Minn. 1997).

**5.** The amended Chapter 7 petition was signed by the Debtor and by Faye Knowles. The amended schedules and Statement of Financial Affairs were signed only by the Debtor.

**6.** At the hearing on this motion, the Court stated that the arguments made by Lamson were "highly technical" and that I did not intend to suggest that the Debtor's first attempt at amending his schedules was not made in good faith or carelessly undertaken.

**7.** The second amended Chapter 7 petition was signed by the Debtor and by Faye Knowles. The second amended schedules and Statement of Financial Affairs were signed only by the Debtor.

## DISCUSSION

### I. LAMSON'S CLAIMS

#### A. *Rule 9011*

Lamson argues that the Debtor, Knowles and Marshall should be sanctioned under Rule 9011 of the Federal Rules of Bankruptcy Procedure because the Debtor's 1996 and 1997 amended petitions, statements of financial affairs and property schedules all contain false statements and material omissions of property interests owned by the Debtor. The full text of Rule 9011 provides:

(a) **Signature.** Every petition, pleading, written motion, and other paper, except a list, schedule, or statement, or amendments thereto, shall be signed by at least one attorney of record in the attorney's individual name. A party who is not represented by an attorney shall sign all papers. Each paper shall state the signer's address and telephone number, if any. An unsigned paper shall be stricken unless omission of the signature is corrected promptly after being called to the attention of the attorney or party.

(b) **Representations to the Court.** By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

(c) **Sanctions.** If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

(1) *How Initiated.*

(A) *By Motion.* A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 7004. The motion for sanctions may not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected, except that this limitation shall not apply if the conduct alleged is the filing of a petition in violation of subdivision (b). If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees.

(B) *On the Court's Initiative.* On its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto.

(2) *Nature of Sanction; Limitations.* A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in

subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

(A) Monetary sanctions may not be awarded against a represented party for a violation of subdivision (b)(2).

(B) Monetary sanctions may not be awarded on the court's initiative unless the court issues its order to show cause before a voluntary dismissal or settlement of the claims made by or against the party which is, or whose attorneys are, to be sanctioned.

(3) *Order.* When imposing sanctions, the court shall describe the conduct determined to constitute a violation of this rule and explain the basis for the sanction imposed.

(d) **Inapplicability to Discovery.** Subdivisions (a) through (c) of this rule do not apply to disclosures and discovery requests, responses, objections, and motions that are subject to the provisions of Rules 7026 through 7037.

(e) **Verification.** Except as otherwise specifically provided by these rules, papers filed in a case under the Code need not be verified. Whenever verification is required by these rules, an unsworn declaration as provided in 28 U.S.C. § 1746 satisfies the requirement of verification.

(f) **Copies of Signed or Verified Papers.** When these rules require copies of a signed or verified paper, it shall suffice if the original is signed or verified and the copies are conformed to the original.

FED. R. BANKR. P. 9011. Rule 9011 was substantially amended in 1997 to conform to the 1993 changes to Rule 11 of the Federal Rules of Civil Procedure.[8] FED. R. BANKR. P. 9011 Advisory Committee Note. Because the language of Rule 9011 closely tracks the language of Rule 11 of the Federal Rules of Civil Procedure, cases interpreting Civil Rule 11 are applicable to Rule 9011 cases. *Snyder v. Dewoskin (In re Mahendra)*, 131 F.3d 750, 759 (8th Cir.1997).

▇▇▇ The 1997 revision to Rule 9011 was intended to broaden the scope of an attorney's or pro se litigant's obligation to the court, while at the same time placing greater constraints on the imposition of sanctions to reduce the number of motions for sanctions presented to the court. *See* FED. R. CIV. P. 11 Advisory Committee Note (1993 amendment). Like its predecessor, the central purpose of new Rule 9011 is to deter baseless filings in the bankruptcy courts and thus streamline the administration and procedure of the federal courts. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990); *Bergeron v. Northwest Publications, Inc.*, 165 F.R.D. 518, 521 (D.Minn.1996). To effectuate this purpose, Rule 9011 requires an attorney to sign all papers served or filed in cases under title 11, except lists, schedules, or statements or amendments thereto, which must be signed by the debtor. *See* 11 U.S.C. § 521 (1994); FED. R. BANKR. P. 9011(a), 1007. A party who is not represented by an attorney is required to sign all papers. FED. R. BANKR. P. 9011(a). By presenting a signed document to the court (whether by signing, filing, submitting, or later advocating it), an attorney or party certifies that she has conducted a reasonable inquiry into the facts and the law and that the document is well grounded in both, and that she is acting without any improper motive. *Id.* Rule

---

**8.** The amended version of Rule 9011 took effect on December 1, 1997, and it governs "all proceedings in bankruptcy cases thereafter commenced and, insofar as just and practicable, all proceedings in bankruptcy cases then pending." *See* Supreme Court Order Amending Federal Rules of Bankruptcy Procedure (Apr. 11, 1997). Although some of the allegedly sanctionable conduct in this case took place prior to the effective date of the amendment, there has been no indication that the application of the amended rule would be either unjust or impractical. Accordingly, the Court concludes that the amended version of Rule 9011 governs for purposes of this motion. *See Ridder v. City of Springfield*, 109 F.3d 288, 296 (6th Cir.1997) (concluding that amended version of Rule 11 applies where party continues to assert frivolous claims after the effective date of amendment).

9011(b). *See Business Guides, Inc. v. Chromatic Communications Enters., Inc. .;* 498 U.S. 533, 542, 111 S.Ct. 922, 928, 112 L.Ed.2d 1140 (1991); *Cooter & Gell,* 496 U.S. at 393, 110 S.Ct. at 2454. If an attorney or party presents a document to the bankruptcy court in violation of this rule, new Rule 9011 permits, but does not require, the court to impose sanctions in an amount sufficient to deter repetition of the sanctionable conduct or comparable conduct by others similarly situated. FED. R. BANKR. P. 9011(c)(2). Rather than limiting such sanctions to the signer of the documents, new Rule 9011 permits sanctions to be imposed against lawyers, law firms, pro se litigants, or represented parties.[9] *Bergeron,* 165 F.R.D. at 521. The type of sanction imposed may include non-monetary sanctions, fines paid to the court, or, if imposed on motion and warranted for effective deterrence, payment of expenses incurred by the opposing party. *Id.*

The 1997 amendment also imposes specific procedural requirements for the imposition of Rule 9011 sanctions. Rule 9011(c)(1) provides that sanctions may be initiated either by motion or on the court's own initiative, and that a motion for sanctions must be made separately from other motions or requests and must describe the specific conduct alleged to violate Rule 9011. Moreover, the 1997 amendment provides that a motion for sanctions:

> may not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected, except that this limitation shall not apply if the conduct alleged is the filing of a petition in violation of subdivision (b).

FED. R. BANKR. P. 9011(c)(1)(A). Thus, under the new rule a party seeking sanctions must follow a two-step process: first, serve the Rule 9011 motion on the opposing party for a period of at least 21 days; and then file the motion with the court. *Ridder,* 109 F.3d

at 294. This provision is intended to provide parties with a type of "safe harbor," under which an offending party, after receiving notice of the alleged violation, is given the chance to withdraw or correct the challenged document or position and thereby avoid the imposition of sanctions. *Id.;* FED. R. CIV. P. 11 Advisory Committee Note (1993 amendment). This "safe harbor" provision of Rule 9011 does not apply where sanctions are being considered on the court's own initiative, however. In such cases, the court is required to enter an order that describes the offensive conduct and directs the alleged violator to show cause why Rule 9011 has not been violated. FED. R. BANKR. P. 9011(c)(1)(B).

After considering Lamson's claims in relation to the record of this case, the Court has reached the inescapable conclusion that Lamson's motion for Rule 9011 sanctions must be denied. First of all, Lamson's motion is procedurally defective because he failed to comply with the 21–day "safe harbor" provision of Rule 9011(c)(1). As stated above, Rule 9011(c)(1) requires a motion for sanctions to be served on the adverse party at least 21 days prior to filing the motion with the court. In this case, Lamson served his motion for sanctions on January 14, 1998, and then filed the motion with the court on January 16, 1998. This failure by itself constitutes grounds to deny Lamson's motion. *Hadges v. Yonkers Racing Corp.,* 48 F.3d 1320, 1328 (2d Cir.1995); *Kirk Capital Corp. v. Bailey,* 16 F.3d 1485, 1488–89 (8th Cir. 1994).

More importantly, however, despite his fervent allegations of false statements and concealment of property interests by the Debtor and his attorneys, Lamson did not present any evidence to support his claims. Rather than presenting oral testimony or documentary exhibits at the hearing on this motion, *see* FED. R. BANKR. P. 9017, Lamson presented only accusatory allegations and arguments to dispute the veracity of the statements made in the Debtor's amended

---

9. In the case of represented parties, however, subdivision (c)(2)(A) of Rule 9011 provides that monetary sanctions may not be awarded against a represented party for making claims that are

not warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law. FED. R. BANKR. P. 9011(c)(2)(A).

petitions and schedules. An excerpt from Lamson's memorandum of law is illustrative of this point:

It is ironic that Knowles claims Lamson's "story" that her client Russ is a Dishonest Debtor is "untrue and unproved." If it were untrue how could it ever be proved? And if, as Knowles and Marshall maintain, Russ isn't a Dishonest Debtor, why don't they arrange for an evidentiary hearing in which Russ could prove that he is an Honest Debtor and clear his "good name?"

Lamson Memorandum at 9. What Lamson fails to understand is that the burden is on *him* to prove that sanctions are deserved in this case, not the other way around. Because of the lack of evidence before the Court, there is simply no basis to conclude that there are false statements or material omissions contained in the Debtor's amended petitions and schedules.

### B. *28 U.S.C. § 1927*

 Lamson also argues that Knowles and Marshall, as attorneys for the Debtor,[10] should be sanctioned pursuant to 28 U.S.C. § 1927. Section 1927 provides:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927 (1994). The standard for imposing sanctions under § 1927 is whether the attorney's conduct "viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court." *Perkins v. Spivey*, 911 F.2d 22, 36 (8th Cir. 1990) (citing *Braley v. Campbell*, 832 F.2d 1504, 1512 (10th Cir.1987)). Section 1927 should be utilized "only in instances of egregious disregard for orderly judicial process which demonstrate an intentional departure from acceptable professional conduct or a

reckless indifference to professional duty." *Booker v. Stauffer Seeds, Inc. (In re RBA, Inc.)*, 60 B.R. 953, 958 (Bankr.D.Minn.1986). In the bankruptcy context, however, it is important to note that the Eighth Circuit has cast doubt on whether the bankruptcy courts have the power to impose sanctions under § 1927, stating that "it is questionable whether a bankruptcy court falls within the definition of 'courts of the United States' for purposes of imposing sanctions against attorneys under [28 U.S.C. § 1927]." *Brown v. Mitchell (In re Arkansas Communities, Inc.)*, 827 F.2d 1219, 1221 (8th Cir.1987).

 Even if I assume that bankruptcy courts have the power to impose sanctions under 28 U.S.C. § 1927, there is still no evidence upon which to do so in this case. Lamson has not produced any evidence showing that Knowles and Marshall unreasonably and vexatiously multiplied the proceedings in this case, and Lamson's § 1927 motion, like his Rule 9011 motion, must fail.

### C. *Contempt of Court*

Finally, Lamson argues that the Debtor, Knowles and Marshall have violated this Court's August 27, 1996 and November 13, 1997 orders and requests the Court to issue an order directing them to show cause why they should not be held in contempt of court. When considering contempt sanctions, it is important to determine the type of contempt being charged, i.e., whether it is a charge of civil contempt or criminal contempt. To determine the nature of a charge of contempt, one must look to the "character and purpose" of the sanction requested. *International Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827, 114 S.Ct. 2552, 2557, 129 L.Ed.2d 642 (1994) (citing *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 441, 31 S.Ct. 492, 498, 55 L.Ed. 797 (1911)). A contempt sanction is considered civil in nature if it is coercive or serves to compensate parties for another's noncompliance with a court order. *Id.* at 827, 828, 114 S.Ct. at 2557–58; *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303–04, 67

---

**10.** It is unclear whether Lamson argues that the Debtor should be sanctioned pursuant to § 1927 as well as Knowles and Marshall. To the extent

that Lamson makes this argument, it must fail because the Debtor is not an attorney.

S.Ct. 677, 701–02, 91 L.Ed. 884 (1947). If, on the other hand, the sanction is punitive and serves to vindicate the authority of the court, then the sanction is for criminal contempt. *Id.*

■■■■ The United States Court of Appeals for the Eighth Circuit has held that § 105 of the Bankruptcy Code gives bankruptcy courts the power to impose sanctions for criminal contempt as well as for civil contempt.[11] *See Brown v. Ramsay (In re Ragar)*, 3 F.3d 1174, 1178–79 (8th Cir.1993) (holding that 11 U.S.C. § 105 gives bankruptcy courts the power to impose criminal contempt sanctions when the procedures of Bankruptcy Rule 9020 are followed). *See also Placid Refining Co. v. Terrebonne Fuel and Lube, Inc. (In re Terrebonne Fuel and Lube, Inc.)*, 108 F.3d 609, 612–13 (5th Cir. 1997) (stating that bankruptcy courts have the power to impose sanctions for civil contempt); *Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.)*, 77 F.3d 278, 284 (9th Cir.1996) (same); *Burd v. Walters (In re Walters)*, 868 F.2d 665, 669 (4th Cir. 1989) (same). *But see Griffith v. Oles (In re Hipp, Inc.)*, 895 F.2d 1503, 1521 (5th Cir. 1990) (concluding that bankruptcy courts have no power to preside over criminal contempt trials). When deciding whether to impose contempt sanctions, a bankruptcy court must follow the procedures outlined in Rule 9020 of the Federal Rules of Bankruptcy Procedure.[12] For example, where the contemptuous behavior was not committed in the physical presence of the bankruptcy judge, the bankruptcy judge must provide the contemnor with written notice and a hearing before ordering contempt sanctions. FED. R. BANKR. P. 9020(b). Such notice must "state the essential facts constituting the contempt charged and describe the contempt as criminal or civil and shall state the time and place of hearing, allowing a reasonable time for the preparation of a defense." *Id.* Furthermore, in cases of out-of-court criminal contempts, the judge must request the United States Attorney's Office to prosecute the contempt, and may appoint a disinterested private attorney to prosecute if that request is denied. *Young v. United States*, 481 U.S. 787, 801–02, 107 S.Ct. 2124, 2134–35, 95 L.Ed.2d 740 (1987). Finally, if a party objects to a bankruptcy court's order of contempt within 10 days after the order was served, the order is subject to de novo review by the district court as provided in Bankruptcy Rule 9033(d). FED. R. BANKR. P. 9020(c). Otherwise, the order is final "and shall have the same force and effect as an order of contempt entered by the district court...." *Id.*

**11.** The Court notes that the Eighth Circuit did not address the issue of whether criminal contempt proceedings in the bankruptcy courts violate the jurisdictional provisions of 28 U.S.C. § 1334 (providing that "the district courts shall have original but not exclusive jurisdiction of all *civil* proceedings arising under title 11, or arising in or related to cases under title 11") (emphasis added).

**12.** Rule 9020 provides:
**(a) Contempt Committed in Presence of Bankruptcy Judge.** Contempt in the presence of a bankruptcy judge may be determined summarily by a bankruptcy judge. The order of contempt shall recite facts and shall be signed by the bankruptcy judge and entered of record.
**(b) Other Contempt.** Contempt committed in a case or proceeding pending before a bankruptcy judge, except when determined as provided in subdivision (a) of this rule, may be determined by the bankruptcy judge only after a hearing on notice. The notice shall be in writing, shall state the essential facts constituting the contempt charged and describe the contempt as criminal or civil and shall state the time and place of hearing, allowing a rea-

sonable time for the preparation of the defense. The notice may be given on the court's own initiative or on application of the United States attorney or by an attorney appointed by the court for that purpose. If the contempt charged involves disrespect to or criticism of a bankruptcy judge, that judge is disqualified from presiding at the hearing except with the consent of the person charged.
**(c) Service and Effective Date of Order; Review.** The clerk shall serve forthwith a copy of the order of contempt on the entity named therein. The order shall be effective 10 days after service of the order and shall have the same force and effect as an order of contempt entered by the district court unless, within the 10 day period, the entity named therein serves and files objections prepared in the manner provided in Rule 9033(b). If timely objections are filed, the order shall be reviewed as provided in Rule 9033.
**(d) Right to a Jury Trial.** Nothing in this rule shall be construed to impair the right to a jury trial whenever it otherwise exists.
FED. R. BANKR. P. 9020.

As previously stated, however, there has been no evidence presented and no record made in this case of concealment of property interests by the Debtor or his attorneys, and thus no grounds exist upon which to initiate contempt proceedings. As a result, Lamson's motion for an order to show cause why the Debtor and his attorneys should not be held in contempt of court is also denied.

## II. SANCTIONS AGAINST LAMSON

Because of the lack of evidentiary support for Lamson's motion, the Court believes that Lamson's motion itself is a violation of Rule 9011, and has therefore decided to impose sanctions against Lamson. Rule 9011(c)(1)(A) provides that, upon the filing of a motion for Rule 9011 sanctions, if warranted "the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion." FED. R. BANKR. P. 9011(c)(1)(A). This provision allows a court to award reasonable expenses and attorneys' fees to the prevailing party without the need for cross-motions under Rule 9011. FED. R. CIV. P. 11 Advisory Committee Note (1993 amendment); 10 LAWRENCE P. KING ET AL., COLLIER ON BANKRUPTCY ¶ 9011.06[1][e], at 9011–27 (15th ed. rev. 1997). *See, e.g., Equal Employment Opportunity Comm'n v. Tandem Computers, Inc.,* 158 F.R.D. 224, 229–30 (D.Mass.1994).

As discussed above, by presenting a signed document to the court a pro se litigant certifies, among other things, that the signer has conducted a reasonable inquiry into the facts and law, that the document is not being presented for an improper purpose, and that the allegations and other factual contentions contained in the document have evidentiary support. *See* FED. R. BANKR. P. 9011(b)(1), (3). In this case, the allegations and factual contentions contained in Lamson's motion have absolutely no evidentiary support whatsoever, in clear violation of Rule 9011(b)(3). To make matters worse, Lamson's current defective motion is strikingly similar to his September 26, 1996 motion seeking Rule 9011 sanctions against Diane Russ, which was also denied because of a lack of evidentiary support. Although, in recognition of Lamson's pro se status, this Court has been patient and flexible with him, allowing him the benefit of the doubt throughout these proceedings, such status is not a license to ignore the requirements of the Federal Rules of Bankruptcy Procedure. Accordingly, the Court has concluded that Lamson should pay the reasonable expenses and attorneys' fees incurred by the Debtor and his attorneys in opposing this motion.

NOW, THEREFORE, IT IS HEREBY ORDERED:

1. The motion of Kevin J. Lamson for sanctions against the Debtor and his attorneys and requesting an order to show cause why the Debtor and his attorneys should not be held in contempt of court is hereby DENIED; and

2. Kevin J. Lamson is ordered to pay the reasonable expenses and attorneys' fees incurred by the Debtor, Knowles and Marshall in opposing this motion pursuant to Fed. R. Bankr.P. 9011(c)(1)(A). Knowles and Marshall shall submit to the Court a sworn affidavit stating the amount of such fees and expenses.

IT IS SO ORDERED.